**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN CUNNINGHAM,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER KROEGER, RICH ALDRICH, JEFFREY D. CAPELLO, MARY FISHER, JOHN HOWE, MARC KOZIN, JOHN SEXTON, and OVASCIENCE, INC.<br><br>    Defendants. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff John Cunningham ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.  Plaintiff brings this action against OvaScience, Inc. ("OvaScience" or the "Company") and OvaScience's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). OvaScience and the Board are referred to collectively, herein, as "Defendants." Specifically, Defendants solicit stockholder approval in connection with the proposed acquisition of the Company by Millendo Therapeutics, Inc. ("Millendo"), through a registration statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

1

2. On August 9, 2018, OvaScience and Millendo issued a press release announcing that the two entities had entered into a definitive agreement (the "Merger Agreement"), by which OvaScience will merge with Millendo in an all-stock transaction (the "Proposed Transaction").

3. On September 26, 2018, Defendants issued materially incomplete and misleading disclosures in a Form S-4 Registration Statement (the "Registration Statement") filed with the SEC in connection with the Proposed Transaction. Specifically, the Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning the background of the transaction and the Board's consideration of the 257 entities that expressed an interest in acquiring the Company. Without this information, OvaScience stockholders cannot make an informed decision with respect to the Proposed Transaction.  The omission of such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4. For these reasons, as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

6. The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because OvaScience is incorporated in this District, and Defendants have received substantial compensation by doing business in this District via OvaScience.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of OvaScience common stock.

9. Defendant Christopher Kroeger ("Kroeger") joined OvaScience as Chief Executive Officer in September 2017.

10. Defendant Rich Aldrich ("Aldrich") is a director of OvaScience.

11. Defendant Jeffrey D. Capello ("Capello") is a director of OvaScience.

12. Defendant Mary Fisher ("Fisher") is a director of OvaScience.

13. Defendant John Howe ("Howe") is a director of OvaScience.

14. Defendant Marc Kozin ("Kozin") is a director of OvaScience.

15. Defendant John Sexton ("Sexton") is a director of OvaScience.

16. Defendants Sexton, Kozin, Howe, Fisher, Capello, Aldrich, and Kroeger are collectively referred to as "Individual Defendants" and/or the "Board."

17. Defendant OvaScience is a pharmaceutical company focused on the discovery and development of new treatment options for women and families struggling with infertility. Until recently, OvaScience was devoted to developing new treatment options based on immature egg cells found within the outer ovarian cortex ("EggPC cell technology"), which could help restore

a woman's egg production, as well as other treatments which could eliminate the need for hormone stimulation. The Company is publicly traded on the NASDAQ under the symbol "OVAS." The Company is incorporated in Delaware and maintains its principal executive offices at 9 Fourth Avenue, Waltham, MA 02451.

18. The Individual Defendants and OvaScience are collectively referred to as "Defendants."

## OTHER RELEVANT ENTITIES

19. Millendo is a late-stage biopharmaceutical company focused on developing novel treatments for orphan endocrine diseases where current therapies do not exist or are insufficient. The Company operates from its headquarters located at 301 N. Main Street, Suite 100 Ann Arbor, MI 48104.

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Background of the Merger**

20. The impetus of this merger can be traced to numerous issues surrounding OvaScience's disappointing results of its clinical developments. In the summer of 2017, OvaScience reduced its workforce by approximately 50% after announcing that it would discontinue ongoing efforts related to certain treatment outside of North America, and would devote its focus to advancing the clinical development of its OvaPrime program and the preclinical development of its OvaTure program.

21. On January 3, 2018, OvaScience announced a further restructuring of its organization and an additional workforce reduction of approximately 50%.

22. Later, on March 15, 2018, OvaScience announced that its Phase 1 clinical trial of OvaPrime exhibited disappointing results. Following this announcement, OvaScience's management and its Board engaged in discussions relating to potential measures to preserve its

4

cash while maximizing stockholder value. A few weeks later, on March 29, 2018, the Board voted to establish the Business Development Committee (the "Committee"), consisting of directors Marc Kozin, Jeffrey Capello, and John Howe so as to provide additional board oversight and assistance in completing a review of OvaScience's strategic options.

23.     Of particular interest to the Committee and the Board was the potential feasibility of a merger with a privately-held life sciences company, with OvaScience's stock being used as the consideration in the transaction.

24.     To assist in this process, on April 12, 2018, OvaScience formally engaged Ladenburg Thalmann & Co. Inc. ("Ladenburg") to provide financial advisory services, including conducting a broad market search to identify and reach out to suitable merger candidates.

25.     On May 3, 2018, OvaScience formally announced that it had initiated a process to explore a range of strategic alternatives for enhancing shareholder value, including a potential sale or merger.

26.     Following this announcement, Ladenburg initiated a process of broad outreach to potential merger candidates, including companies that were believed to be considering going public through an initial public offering, companies that had recently completed financing rounds with known crossover investors, and companies that were pursuing the development of product candidates in therapeutic areas garnering significant attention from life science investors. As part of this process, outreach was completed to a total of 257 companies.

27.     As part of this outreach process, Ladenburg requested that indications of interest be submitted by May 31, 2018.

28. By June 6, 2018, 42 of these 257 companies had submitted indications of interest in a transaction with OvaScience. Additionally, by this time, all 42 companies had entered into a confidentiality agreements with OvaScience.

29. On June 6, 2018, the Committee met to review the bids that had been received from potential partners in a strategic transaction and discussed the process to date. During the meeting, David Strupp of Ladenburg discussed the status of outreach efforts, and proceeded to share a list of companies that provided proposals to OvaScience and identified for the Business Development Committee the eight companies, including Millendo, that had been selected by OvaScience management as finalists, in consultation with Ladenburg, and two other companies that had been selected as alternates. Shortly thereafter, Strupp and Dr. Kroeger summarized the bids and clinical programs of those ten companies and presented a comparison of the financial terms proposed by each. The finalists represented companies focused on a variety of indications, and their initial proposals offered OvaScience Stockholders post-closing stock ownership percentages ranging from 13.5% to 29.0% in the combined entities.

30. These eight finalists were directed to make an in-person management presentation to OvaScience's management team and Business Development Committee on June 18 or 19, 2018.[1]

31. On June 18 and 19, 2018, the Business Development Committee, members of OvaScience's management team, and representatives from Ladenburg met in person with the management teams of each of the eight finalists at OvaScience's offices. Following these

---

[1] One additional company was introduced to OvaScience as a potential merger partner through an outside financial advisor and was invited to make an in-person management presentation to the Business Development Committee on June 18-19, 2018. However, on June 14, 2018, the company notified Dr. Kroeger that it was no longer interested in pursuing this opportunity.

presentations, the Business Development Committee and OvaScience management team engaged in an extensive discussion regarding the benefits and drawbacks of each of the candidates.[2] Following this discussion, there was consensus on the part of the members of the Business Development Committee and the OvaScience management team in favor of advancing discussions and diligence efforts with Millendo, as well as two other candidates, Company A and Company B. Three other companies, Companies C, D and E, were designated as back-ups for potential further evaluation if the discussions with Millendo, Company A and Company B did not succeed.

32. Beginning on June 20, 2018, OvaScience proceeded to press ahead with diligence and engaged in negotiations with the preferred candidates. In light of these promising developments, Ladenburg informed Companies C, D, E, F, and G that they had not been selected to move to the next stage of the process.

33. Approximately one week later, on June 26, 2018, OvaScience's board of directors held a telephonic meeting to review the status of the competing proposals. This review prompted the OvaScience Board to determine that it would be in the best interests of OvaScience Stockholders for OvaScience and its representatives to focus on negotiating a final, non-binding term sheet with Millendo, given the strength of the Millendo clinical development programs and management team.

34. Two days later, following multiple discussions between the two entities, OvaScience and Millendo executed a non-binding term sheet. Following execution of the term sheet on the same day, Ladenburg informed Company A and Company B that OvaScience had

---

[2] The Registration Statement notes that Defendant Kozin left the meeting during the discussion of the company on which he serves as a member of the board of directors.

executed a term sheet with a 45-day period of exclusivity and that therefore no further discussions would take place with those parties.

35.  Throughout July and into early August, representatives from OvaScience and Millendo and their advisors continued to negotiate terms of the Merger Agreement and perform due diligence on OvaScience and Millendo. On August 8, 2018, the OvaScience Board of Directors held a telephonic meeting for the purpose of reviewing and discussing the final terms of the Merger Agreement, including consideration of the fairness analysis by Ladenburg with respect to the merger consideration and receiving an update as to timing of the Merger and open items.

36.  During this August 8, 2018 meeting, Ladenburg provided a detailed fairness presentation and concluded that that the Exchange Ratio was fair, from a financial point of view, to the OvaScience Stockholders. Later, legal counsel to OvaScience provided a review of the Board's fiduciary duties and other legal aspects of the transaction. Following these presentations, the Board expressed consensus and satisfaction that a full and complete process had been run and that the appropriate corporate governance steps had been taken. The Board further determined that the proposed transaction was the best opportunity for maximizing OvaScience stockholder value, noting the objective merits of both the process that had been engaged in, the ultimate selection of Millendo based on scientific, clinical, and probability-of-success grounds, and the deal terms.

37.  Following these discussions, the OvaScience Board of Directors unanimously determined that the transactions contemplated by the Merger Agreement, including the Merger and the issuance of shares of OvaScience Common Stock to the Millendo Stockholders pursuant to the Merger Agreement, were fair to, advisable and in the best interest of OvaScience and the

OvaScience Stockholders; approved and declared advisable the Merger Agreement and the transactions contemplated therein, including the Merger and the issuance of shares of OvaScience Common Stock to the Millendo Stockholders; and determined to recommend, upon the terms and subject to the conditions of the Merger Agreement, that the OvaScience Stockholders vote to approve the Merger Agreement and the transactions contemplated therein, including the Merger and the issuance of shares of OvaScience Common Stock to the Millendo Stockholders, and, if deemed necessary, the OvaScience Reverse Stock Split. Management was directed to sign the Merger Agreement.

38. The merger agreement was executed later that evening, and on August 9, 2018, OvaScience and Millendo issued a joint press release publicly announcing the signing of the definitive Merger Agreement.

**Proposed Transaction**

39. In a press release dated August 9, 2018, OvaScience announced that it had entered into a Merger Agreement with Millendo.

40. The press release states in pertinent part:

> **WALTHAM, Mass. and ANN ARBOR, Mich., August 9, 2018** — OvaScienceSM (Nasdaq:OVAS) and privately-held Millendo Therapeutics, Inc., a clinical-stage biopharmaceutical company focused on developing novel treatments for orphan endocrine diseases, announced today that they have entered into a definitive agreement under which OvaScience will merge with Millendo in an all-stock transaction. The merged company will focus on advancing Millendo's pipeline of distinct and transformative treatments for orphan endocrine diseases. Upon shareholder approval, the combined company is expected to operate under the name Millendo Therapeutics and trade on the Nasdaq Capital Market under the ticker symbol MLND.
>
> An investor syndicate that includes New Enterprise Associates, Frazier Healthcare Partners, Roche Venture Fund, Innobio managed by Bpifrance, Osage University Partners, Altitude Life Science Ventures, Adams Street Partners, and Longwood Fund has committed to invest $30 million in the combined company. This financing will help fund the further development of Millendo's lead assets, livoletide (AZP-531) and nevanimibe (ATR-101), and is expected to close before

9

or concurrently with the completion of the merger. The total cash balance of the combined company following the closing of the merger and the financing is expected to be at least $70 million.

Millendo is leveraging its deep understanding of recent biological discoveries in endocrinology to build a strong pipeline based on its clinically-validated molecules with differentiated mechanisms. Millendo's lead asset, livoletide, is an unacylated ghrelin analogue being developed for the treatment of Prader-Willi syndrome, a rare genetic disease characterized by hyperphagia, a chronic unrelenting hunger, that leads to obesity, metabolic dysfunction, reduced quality of life and early mortality. Livoletide demonstrated positive effects in improving hyperphagia and food-seeking behaviors in a Phase 2 study in Prader-Willi syndrome and is expected to advance into a pivotal Phase 2b/3 study in the first quarter of 2019. Millendo is also developing nevanimibe, an ACAT1 inhibitor for the treatment of two orphan adrenal diseases: classic congenital adrenal hyperplasia (CAH) and endogenous Cushing's Syndrome. Nevanimibe demonstrated positive proof-of-concept and a favorable safety profile in an open-label Phase 2 trial in CAH and is expected to advance into a Phase 2b study in the third quarter of 2018.

"We are excited about the opportunities created by this merger, as it positions us to become a leader in rare endocrine diseases with the funding needed to pursue the potential approval and commercialization of our first-in-class programs," said Julia Owens, Ph.D., President and Chief Executive Officer of Millendo. "Our objective has always been to deliver meaningful therapies to patients who do not have sufficient treatment options, and with this merger, the compelling clinical data for our programs, and the initiations of late-stage trials for both livoletide and nevanimibe expected in the months ahead, we are optimistic that we can deliver on this vision."

"Following an extensive and thorough review of strategic alternatives, we believe that this merger with Millendo is the best path forward and has the potential to deliver significant and immediate value to OvaScience shareholders," said Christopher Kroeger, M.D., Chief Executive Officer of OvaScience. "We are certain that the strength and dedication of the Millendo leadership team provides our combined company with the capabilities to develop new and much-needed therapies for patients with orphan endocrine diseases."

**About the Proposed Transaction**

On a pro forma basis and based upon the number of shares of OvaScience common stock to be issued in the merger, current OvaScience shareholders will own approximately 20% of the combined company and current Millendo investors will own approximately 80% of the combined company (before accounting for the additional financing transaction). The actual allocation will be subject to adjustment based on OvaScience's net cash balance at the time of

closing and the amount of any additional financing consummated by Millendo at or before the closing of the merger. The transaction has been approved by the board of directors of both companies. The merger is expected to close in the fourth quarter of 2018, subject to the approval of OvaScience shareholders at a special shareholder meeting, as well as other customary conditions.

Ladenburg Thalmann & Co. Inc. is acting as financial advisor to OvaScience for the transaction and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. is serving as legal counsel to OvaScience. Cooley LLP is serving as legal counsel to Millendo.

**Management and Organization**

The combined company will be led by Julia Owens, Ph.D., Millendo Chief Executive Officer and President, and will be headquartered in Ann Arbor, Michigan. The board of directors is expected to be composed of seven members, including current Millendo board members Carol Gallagher, Pharm. D., Mary Lynne Hedley, Ph.D., Jim Hindman, Carole Nuechterlein, J.D., Julia Owens, Ph.D., and Randy Whitcomb, M.D., and current OvaScience board member, John Howe, M.D.

**The Registration Statement Misleads OvaScience Stockholders by Omitting Material Information**

41.     On September 26, 2018, OvaScience caused to be filed the Registration Statement with the SEC. As alleged below and elsewhere herein, the Registration Statement contains material misrepresentations and omissions of fact that must be cured to allow OvaScience stockholders to render a properly informed decision with respect to the Proposed Transaction. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial analyses performed by the Company's financial advisors, and other crucial issues. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to OvaScience's stockholders.

*Material Omissions Concerning the Sale Process:*

42. With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Registration Statement indicates that as part of the sale process the Company's financial advisor reached out to a total of 257 companies. By early June 2018, 42 of these companies had submitted indications of interest in a transaction with OvaScience, including Millendo. Furthermore, by this time, each of these companies had entered into a confidentiality agreement with OvaScience. However, the nature and extent of these competing indications of interest are not disclosed in the Registration Statement. Furthermore, details regarding the terms of these confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" ("DADW") provisions that prohibit the counterparties from making an unsolicited superior proposal to OvaScience are worryingly absent from the Registration Statement.

43. The Registration Statement explicitly states that in early June, the Committee reviewed the list of companies that had provided proposals to OvaScience and the Committee selected eight companies as finalists and two other companies as alternates. While the Registration Statement goes on to note that "finalists represented companies focused on a variety of indications, and their initial proposals offered OvaScience Stockholders post-closing stock ownership percentages ranging from 13.5% to 29.0% in the combined entities," Registration Statement at 129, the precise terms of these respective indications of interest are not disclosed in the Registration Statement. Accordingly, stockholders are left without the material information necessary to evaluate the competing levels of interest that were submitted to OvaScience.

44. Compounding these problems is the complete absence of information surrounding the confidentiality agreements entered into by these eight entities. Here, the disclosure of the

terms of the confidentiality agreements OvaScience entered into with potential buyers is crucial to OvaScience stockholders. However, OvaScience stockholders are not provided any information that would lead them to nature of these agreements and any limitations placed on bidders as a result of these agreements. Without further information regarding the presence of standstill provisions or DADW provisions, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect, OvaScience stockholders are unable to properly evaluate the ability of these parties that earlier expressed interest in acquiring the Company to offer them a better deal. If those confidentiality agreements contained standstill provisions or DADW provisions, then those bidders could only make a superior proposal by breaching the agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly.

45. Thus, the omission of this information renders the descriptions of the confidentiality agreements the Company entered into materially incomplete and misleading, as the failure to disclose the existence of standstill and DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. Clearly, any reasonable OvaScience shareholder would deem the fact that the most likely potential topping bidder in the marketplace may be precluded from making a superior offer as significant information.

46. Accordingly, without further information regarding the nature of the confidentiality agreements, the Company's stockholders are being misled into assuming that these other entities, which were actively interested in acquiring the Company, and had already elected to submit a bid to acquire the Company, could make an offer to acquire the Company if they so choose – when they may be contractually precluded from doing so. It is therefore vital

that OvaScience stockholders are provided material information regarding the respective indications of interest that OvaScience received and the terms of any confidentiality agreement that might presently be operating to prevent these interested parties from stepping forward with a superior proposal.

47. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats and realleges each allegation set forth herein.

49. As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

50. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of OvaScience.

51. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information concerning the actual intrinsic value of the Company. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

52. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

**COUNT II**

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of OvaScience within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as

officers and directors of OvaScience and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: October 16, 2018 | **O'KELLY ERNST & JOYCE, LLC** |

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Telephone: (302) 778-4000
Facsimile: (302) 295-2873
Email: rernst@oelegal.com

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*